STATE OF CONNECTICUT

FILED '19 OCT 26 P 1:09 US DISTRICT COURT HARTFORD CT

ss: Hartford, Connecticut

COUNTY OF HARTFORD

Date: October 23, 2018

## AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR CRIMINAL COMPLAINT, ARREST WARRANT AND SEARCH WARRANT

I, John M. Keaney, having been duly sworn, depose and state the following:

1. I am a Special Agent with the United States Department of Housing and Urban Development Office of Inspector General for Investigations ("HUD OIG"). I have been so employed since August of 1998. I graduated from the Criminal Investigator's Training Program, and have attended several other law enforcement training programs at the Federal Law Enforcement Training Center. I have also attended specialized training courses and seminars, where I have received additional training on how to investigate various types of criminal violations, including fraud, money laundering, and public corruption. During my employment with HUD OIG, I have initiated and/or participated in numerous criminal investigations, initiated and/or participated in the arrest of numerous defendants, initiated and/or participated in numerous search warrants, and initiated and/or participated in the questioning of hundreds of witnesses, defendants, and suspects about various criminal violations.

2. I submit this affidavit in support of an application for a criminal complaint and arrest warrant for FNU LNU, also known as "Hailee R. DeSouza" and "Hailee Randolph DeSouza" for violations of Title 18, United States Code, Sections 1001 (False Statements) and 1012 (False Statements in Department of Housing and Urban Development Transactions). Based upon the facts set forth below, there is probable cause to believe, and I do believe, that FNU LNU, also known as "Hailee R. DeSouza" and "Hailee Randolph DeSouza," has violated the above-

referenced criminal statutes.

3. In addition, I make this affidavit in support of applications for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for the following information about the location of the cellular telephone assigned (a) call number 860-977-6652 (the "Target Telephone"), whose service provider is T-Mobile, 4 Sylvan Way, Parsippany, NJ 07054;

   a. an application for an order authorizing the installation and use of a pen register device or process, a trap-and-trace device or process, and for the disclosure of certain electronic communications records and/or information with regards to the Target Telephone;

   b. an application for a warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. 2703(c)(1)(A), authorizing agents and officers from HUD-OIG and deputies of the United States Marshals Service to ascertain the physical location of the Target Telephone, including but not limited to E-911 Phase II data (or other precise location information) concerning the Target Telephone (the "Requested Information"), for a period of thirty (30) days; and

   c. an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B and is referred to as a "cell site simulator," to determine the location of the Target Telephone, which is described in Attachment A to the search warrant.

4. The Target Telephone is described herein and in Attachment A to the respective warrant, and the location information to be seized is described herein and in Attachment B to the respective warrant.

I believe the Target Telephone is being used by FNU LNU, also known as "Hailee R. DeSouza" and "Hailee Randolph DeSouza", for whom I am seeking the criminal complaint and arrest warrant based upon misrepresentations to the Department of Housing and Urban Development. Therefore, I believe that there is probable cause to believe and I do believe that the location information described below and in Attachment B, which is incorporated herein, will assist law enforcement officers in locating and arresting FNU LNU, also known as "Hailee R. DeSouza" and "Hailee Randolph DeSouza" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

5. The information provided herein is based upon my own knowledge and experience, as well as information provided to me by other law enforcement officers, including members of the United States Marshals Service, the United States Department of State-Diplomatic Security Service, the United States Social Security Administration-Office of Inspector General, the United States Department of Health and Human Services-Office of Inspector General, and the Toronto, Canada Police Service. Because this affidavit is submitted for the limited purpose of establishing probable cause for the requested criminal complaint, arrest warrant, and search warrant, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth herein only those facts that I believe are necessary to establish probable cause to support the requested court orders.

## BACKGROUND TO THE INVESTIGATION

6. On June 24, 1987, in Ontario, Canada, Jermaine Mann (black male, date of birth ▇▇▇ 985), was allegedly abducted by his biological father, Allan Mann (black male, date of birth ▇▇▇ 52), during a scheduled weekend visit. Allan Mann immigrated to Canada from Ghana around 1980 and is believed to be a citizen of both countries. It was believed that Allan Mann and Jermaine Mann entered the United States sometime in 1987, where Allan Mann had family

3

members including two brothers, Maxwell Mann and Reginald Lenny Mann.

7. In August of 2018, the United States Marshals Service conducted several interviews of suspected friends and associates of Allan Mann. On August 23, 2018, USMS investigators interviewed Source of Information #1, who stated that she was a close relative of Allan Mann. She stated that Allan Mann had lived in the Bronx, New York area many years ago with his toddler son and that Allan's brother, Maxwell, was helping him. Source of Information #1 indicated that Source of Information #2, another close family member, might have additional information as she was closer to that part of their family.

8. Later on August 23, 2018, investigators interviewed Source of Information #2 in the Bronx, New York. She stated that she had not seen Allan Mann since the 1990s, but she recalled that he might be living in Connecticut with his son, Jermaine. She stated that Allan Mann visited her apartment in the Bronx in the 1990s when Jermaine was around 14 years old.[1] She also stated that she believed that Jermaine was using the name "▇▇▇▇▇▇▇▇▇▇▇▇"

9. A review of commercial and law enforcement databases and social media reveal a son and his father residing in Connecticut going by the names ▇▇▇▇▇▇▇▇▇▇▇▇ and "Hailee Randolph DeSouza." The individual identifying himself as ▇▇▇▇▇▇ reports his birth date as ▇▇▇▇ 1986, and the individual identifying himself as Hailee DeSouza reports his birth date as ▇▇▇ 1957. On August 28, 2018, a forensic specialist from the National Center for Missing and Exploited Children analyzed a known photo of Allan Mann and the 2015 photograph of Hailee DeSouza's Connecticut driver's license and determined that they were likely the same person.

10. The individual identifying himself as Hailee DeSouza has been residing in HUD

---

[1] Jermaine Mann would have been 14 years old in 1999.

Section 8 subsidized housing at 157 Terrace Drive, Vernon, Connecticut since approximately 2004. This individual has provided his cellular telephone number as 860-977-6652 (i.e., the Target Telephone) and his landline number as 860-871-9559. Telephone toll records obtained for these two telephones from 2010 through 2018 show that among 51 unique Ghana-based telephone numbers in contact with Hailee DeSouza's phones, three of those numbers were also in contact with the cellular telephone used by Maxwell Mann, who is Allan Mann's brother. Further, in April 2018, the cellular telephone number used by the individual identifying himself as Hailee DeSouza was in contact 10 times with a telephone number associated with Francis Mann. According to Missing Children Society of Canada Francis Mann is Allan Mann's cousin.

11. Further, I am aware that the former wife of one Alan Mann's friends, Source #3, reported to the United States Marshals Services that she saw Allan Mann and his son, Jermaine Mann in Greensboro, North Carolina in or about 2012. She stated that Allan Mann was an educated man and may have worked as a "draftsman." I am aware that in Hailee DeSouza's 2003 rental application, he listed a personal reference living at 3314 Cherrybrooke Drive, Jameson, North Carolina. The address of 3314, Cherrybrooke Drive, Jamestown, North Carolina is approximately 13 miles from Greensboro, North Carolina. I am also aware that the individual identifying himself as Hailee DeSouza works as some type of engineering consultant.

12. In connection with his rental application to participate in HUD's Section 8 program, the individual identifying himself as Hailee DeSouza provided a birth certificate purportedly issued on October 7, 1985 by the State of Texas for his birth at St. Joseph Hospital, Houston, Texas, on ▬ 1957. The City of Houston-Houston Health Department-Bureau of Vital Statistics has confirmed that the birth certificate is not a legitimate record. In addition, the State of Texas Office of Inspector General-Internal Affairs Directorate in the Health and Human

5

Services Commission could not find a record in their system of any such name with such a birth date.

13. In connection with the same rental application, the individual identifying himself as Hailee DeSouza also provided a birth certificate for his son, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, purportedly issued on March 5, 1989[2] for his birth at Hermann Hospital, Houston, Texas, on ▇▇▇▇▇▇ 1986. The City of Houston-Houston Health Department-Bureau of Vital Statistics has confirmed that the birth certificate is not a legitimate record. In addition, the State of Texas Office of Inspector General-Internal Affairs Directorate in the Health and Human Services Commission could not find a record in their system of any such name with such a birth date.

14. On June 14, 2016, the individual identifying himself as Hailee DeSouza signed a HUD Form 50059 Certification as a tenant. That form stated that the tenant's name was "DeSouza, Hailee," that his date of birth was "▇▇▇▇▇▇ 1957" and that his citizen code was "EC," which the instructions for the form indicate is the code for "citizen or national" of the United States. That form contained a "Tenant(s)' Certification," which provided: "I/We certify that the information in Sections C, D, and E of this form are true and complete to the best of my/our knowledge and belief. I/We understand that I/we can be fined up to $10,000, or imprisoned up to five years, or lose the subsidy HUD pays and have my/our rent increased, if I/we furnish false or incomplete information."

15. On May 15, 2017, the individual identifying himself as Hailee DeSouza completed a "Recertification Update" in connection with his participation in HUD's Section 8 program. On the form, the individual stated that his name was "Hailee R. DeSouza," that his date of birth was

---

[2] March 5, 1989 was a Sunday.

"▓/57," and that his social security number was "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." That form was signed by "Hailee R. DeSouza" under a section that stated: *"Certification by Tenant(s):* I/We have understood and answered all questions on this recertification update. I/We certify that all answers are true to the best of My/Our knowledge and that any misrepresentations of information or false statements are punishable under Federal Law."

16. On June 26, 2017, the individual identifying himself as Hailee DeSouza signed a HUD Form 50059 Certification as a tenant. That form stated that the tenant's name was "DeSouza, Hailee," that his date of birth was "▓1957" and that his citizen code was "EC," which the instructions for the form indicate is the code for "citizen or national" of the United States. That form contained a "Tenant(s)' Certification," which provided: "I/We certify that the information in Sections C, D, and E of this form are true and complete to the best of my/our knowledge and belief. I/We understand that I/we can be fined up to $10,000, or imprisoned up to five years, or lose the subsidy HUD pays and have my/our rent increased, if I/we furnish false or incomplete information."

17. On July 19, 2018, the individual identifying himself as Hailee DeSouza completed a "Recertification Update" in connection with his participation in HUD's Section 8 program. On the form, the individual stated that his name was "Hailee R. DeSouza," that his date of birth was "▓/57," and that his social security number was "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." That form was signed by "Hailee R. DeSouza" under a section that stated: *"Certification by Tenant(s):* I/We have understood and answered all questions on this recertification update. I/We certify that all answers are true to the best of My/Our knowledge and that any misrepresentations of information or false statements are punishable under Federal Law."

7

18. On August 24, 2018, the individual identifying himself as Hailee DeSouza signed a HUD Form 50059 Certification as a tenant. That form stated that the tenant's name was "DeSouza, Hailee," that his date of birth was "▇▇▇▇ 1957" and that his citizen code was "EC," which the instructions for the form indicate is the code for "citizen or national" of the United States. That form contained a "Tenant(s)' Certification," which provided: "I/We certify that the information in Sections C. D, and E of this form are true and complete to the best of my/our knowledge and belief. I/We understand that I/we can be fined up to $10,000, or imprisoned up to five years, or lose the subsidy HUD pays and have my/our rent increased, if I/we furnish false or incomplete information."

19. For the reasons set forth herein, I submit that there is probable cause to believe, and I do believe, that FNU LNU, also known as "Hailee R. DeSouza" and "Hailee Randolph DeSouza" has committed violations of Title 18, United States Code, Sections 1001 (False Statements) and 1012 (False Statements in Department of House and Urban Development Transactions). I respectfully request the issuance of the requested criminal complaint and arrest warrant.

20. As explained above, the individual who has identified himself as Hailee DeSouza has provided 860-977-6652 as his cellular telephone number. I am aware that T-Mobile provides service for this number. I am also aware that the individual who has identified himself as Hailee DeSouza travels frequently, including purported work trips out of the State of Connecticut for extended periods of time.

21. I am aware from consultation with the United States Marshals Service that T-Mobile is a company that provide cellular telephone access to the general public. I am also aware that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to

8

which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my consultation with the United States Marshals Service, I know that T-Mobile can collect E-911 Phase II data and cell-site data about the location of the Target Telephone, including by initiating a signal to determine the location of the Target Telephone on their networks or with such other reference points as may be reasonably available.

22. Investigators may use the cellular site simulator if information obtained from the E-911 order is incapable of locating the Target Telephone. Based upon my communications with the United States Marshals Service, I have learned that certain electronic communications service providers have been providing location radiuses in upwards of thousands of meters. Investigators have prior experience with service providers providing location radiuses of over one thousand meters, thus hampering law enforcement's ability to identify the location of a Target Telephone, especially if in an urban areas.

### MANNER OF EXECUTION OF CELL SITE SIMULATOR

23. I am aware from the United States Marshals Service that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

24. To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the Target Telephone or receiving signals from nearby cellular devices, including the Target Telephone. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the Target Telephone and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the Target Telephone and use that information to determine the location of the Target Telephone, even if a Target Telephone is located inside a house, apartment, or other building.

25. Based upon my communications with the United States Marshals Service, I am aware that the investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Telephone, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Telephone, and law enforcement will limit collection of information from devices other than the Target Telephone. To the extent that any information from a cellular device other than the Target

Telephone is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Telephone from all other cellular devices.

## AUTHORIZATION REQUEST FOR CELL SITE SIMULATOR

26. Based on the foregoing, there is probable cause to believe that the use of the cell site simulator will lead to evidence regarding violations of Title 18, United States Code, Sections 1001 (False Statements) and 1012 (False Statements in Department of Housing and Urban Development Transactions) by FNU LNU, who is identifying himself as Hailee DeSouza. The cell site simulator will help investigators determine the location of then individual identifying himself as Hailee DeSouza so that law enforcement agents can conduct physical surveillance of him and, hopefully confirm his true identity.

27. WHEREFORE, I request that the Court issue the proposed search warrant for a cell site simulator, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123. A search warrant may not be legally necessary to compel the investigative technique described herein (i.e., the use of a cell site simulator). Nevertheless, I hereby submit this warrant application out of an abundance of caution.

## AUTHORIZATION REQUEST FOR E911 and PEN REGISTER

28. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

29. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrants to delay notice until 30 days after the collection authorized by the warrants has been completed. There is reasonable cause to believe that providing immediate notification of the warrants may have an adverse result,

as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscribers or users of the Target Telephone would seriously jeopardize the ongoing investigation, as such a disclosure would give those people an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from or continue flight from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B to the respective warrant, which are incorporated into the warrants, the proposed search warrants do not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrants authorize the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

30. I further request that the Court direct T-Mobile, or any other contractual roaming carrier, to disclose to the government any information described in Attachment B to the warrants that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government including HUD-OIG and the United States Marshals Service all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B to the warrants unobtrusively and with a minimum of interference with T-Mobile services, including by initiating a signal to determine the location of the Target Telephone on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

31. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Telephone outside of daytime hours.

32. I also request that this affidavit, the requested criminal complaint, the requested arrest warrant, and the requested search warrant be placed under seal by the Court until the time of the initial appearance in order to guard against flight and to protect the safety and well-being of law enforcement officers who will be serving the arrest warrant and the safety and well-being of individuals who have cooperated with the investigation.

Respectfully submitted,

JOHN M. KEANEY
Special Agent
HUD-OIG

Subscribed and sworn to before me this 23rd day of October, 2018

/s/ Robert A. Richardson
ROBERT A. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

1.  The cellular telephone assigned call number 860-977-6652 (the "Target Telephone"), whose wireless service provider is T-Mobile, 4 Sylvan Way, Parsippany, NJ 07054.

2.  Information about the location of the Target Telephone that is within the possession, custody, or control of T-Mobile, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the Target Telephone escribed in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to HUD-OIG and the U.S. Marshal Service. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Telephone on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government or HUD-OIG and U.S. Marshal Service. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).