## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v. : | Criminal No. 3:18cr279(JCH) |
| ALLAN MANN, a.k.a. "Hailee Randolph : | |
| DeSouza" | November 7, 2019 |

### GOVERNMENT'S SENTENCING MEMORANDUM

For 31 years, Allan Mann hid in plain sight in the United States, posing as a U.S. citizen and reaping the benefits that such citizenship affords, including tens of thousands of dollars in housing and medical assistance. "Hailee Randolph DeSouza," as Mann called himself, received over $125,000 through HUD's Section 8 program, and over $55,000 in Medicaid program assistance. Mann orchestrated these payments through a deliberate, intricate and lengthy deception on the government at every level—from the federal government, the state of Connecticut, down through his local housing authority. Far from a "simple false statement" case as the defendant asserts, Mann's actions constituted a sophisticated scam.

The Government respectfully submits this memorandum in aid of sentencing and in response to the defendant's memorandum dated October 31, 2019 (Doc. 57). For the reasons set forth herein, the Government submits that a Guidelines sentence of 18 to 24 months is the reasonable and appropriate sentence in this matter.

I. **THE OFFENSE AND RELEVANT CONDUCT**

The facts that give rise to Mann's conviction on Count Two of the Indictment are not in dispute and are set forth in the PSR paragraphs 5 through 12:

On June 24, 1987, in Ontario, Canada, the mother of 20-month-old Jermaine Mann reported to police that her son was abducted by his biological father, Allan Mann, during a scheduled weekend visit. The Toronto Police Department maintains an active arrest warrant for Allan Mann for abduction.

Sometime thereafter, Allan and Jermaine Mann entered the United States, although the exact date and location of the Manns' crossing is unknown.[1] Allan Mann had family members in the United States, including two brothers.

At some point, Allan Mann obtained a purported birth certificate in the name of "Hailee Randolph DeSouza," issued on October 7, 1985, by the State of Texas for his birth at St. Joseph Hospital, Houston, Texas, on June 19, 1957. The City of Houston-Houston Health Department-Bureau of Vital Statistics has confirmed that the birth certificate is not a legitimate record. Allan Mann also obtained a birth certificate for his minor son, Jermaine, for his birth at Hermann Hospital, Houston,

---

[1] The PSR sheds little light on this time period in Mann's life, and Mann has not provided many details of his whereabouts and actions. The PSR does note that Mann's now-adult son reported to law enforcement that his father had told him that his mother was named Abigail and had died in a car accident when he (the son) was 6 months old. He reported that he and his father were born in Texas and that they lived in West Virginia until his senior year of high school when they moved to Connecticut. Mr. Mann's son had no idea that his mother was, in fact, alive and had been looking for him for almost 31 years until he was informed on the day of Mr. Mann's arrest on October 26, 2018. *See* PSR ¶ 38.

Texas, on January 18, 1986.[2] The City of Houston-Houston Health Department-Bureau of Vital Statistics has confirmed that this birth certificate is also not a legitimate record.

In June of 1990, Allan Mann, using the alias of "Hailee Randolph DeSouza," applied for and received a social security number, presenting the purported birth certificate from Houston, Texas. Law enforcement believe that Allan Mann had been living under the name of "Hailee DeSouza," at various iterations thereof, since at least 1990 in various parts of the United States, including Texas, West Virginia, and, most recently, Connecticut.

In November of 2004, Allan Mann, using the alias "Hailee R. DeSouza," applied to participate in the United States Department of Housing and Urban Development's ("HUD") Section 8 program. This program provides rental assistance to eligible tenants. In connection with his application, Allan Mann filled out a Form 50059, in which he falsely certified that his "citizen code" was "EC," which stands for "citizen or national" of the United States. The form contained a certification that the information on the form was "true and complete" to the best of Mann's knowledge. Mann has participated in the Section 8 program on and off since 2004 and continuously from August 2016 through October of 2018. When Mann participated in the Section 8 program, he was required annually to sign a HUD Form 50059 Certification as a tenant, and to certify his name, date of birth, and his citizen code.

---

[2] The government is not identifying the name that Jermaine currently goes by to protect his privacy.

Each time Mann signed these certifications, he falsely represented his name, his date of birth, and his citizen code as "EC," for citizen or national, including on June 24, 2016. *See* Count Two of the Indictment. Since 2004, HUD has paid approximately $126,777 in Section 8 benefits on behalf of Mann, including payments of $34,744 for the years specified in the Indictment (2016, 2017 and 2018).

In September of 2010, Allan Mann, using the alias "Hailee R. DeSouza," applied to participate in the Medicaid program administered by the State of Connecticut, Department of Social Services. The Medicaid program is a "health care benefit program," in which medical benefits, items and services are provided to Medicaid clients in Connecticut. The Connecticut Medicaid program is jointly funded by the State of Connecticut and the United States. On the Medicaid application form, Mann falsely reported his true name, date of birth and his place of birth. One particular question asked: "Are you fleeing from the authorities?" Mann falsely responded: "No." The application form contains a section whereby the applicant acknowledges: "False or misleading statements made when applying for Medical Assistance violate federal law and may be punishable by [specified penalties]." In support of his application, Mann presented the fraudulent birth certificate from Houston, Texas.

On November 8, 2013, Mann, using the alias "Hailee Randolph DeSouza," reapplied to participate in the Medicaid program through the State of Connecticut's online web portal. Mann falsely stated that he was a "U.S. citizen" and falsely reported his date of birth. In 2016 and 2017, Mann, using the alias "Hailee Randolph

4

DeSouza," completed Medicaid Reenrollment Applications. On both of these applications, Mann falsely stated that he was a U.S. citizen and falsely reported his date of birth. Since 2004, the Medicaid program has paid approximately $52,970.19 in claims on behalf of Mann and approximately $2,876.37 on behalf of Mann's then-dependent, his minor son. This includes $18,512.05 in payments made for the years specified in the Indictment (2013, 2016 and 2017).

The United States understands that there remains an active warrant for Mr. Mann's arrest in Canada.

## II.   THE PRE-SENTENCE REPORT AND GUIDELINES CALCULATION

### A. The PSR

The statutory maximum for the charge in the information is five years of imprisonment, a three-year term of supervised release, and a $250,000 fine. *See* 18 U.S.C. § 1001.

The PSR calculates the defendant's base offense level as 6 under U.S.S.G. § 2B1.1(a)(2). *See* PSR ¶ 17. Ten levels are added because the offense involved a loss to the Government in excess of $150,000. *See* PSR ¶ 18, U.S.S.G. § 2B1.1(b)(1)(F). The Government submits that a two level enhancement under U.S.S.G. § 2B1.1(b)(10)(C) is appropriate, as set forth below. This would result in an adjusted offense level of 18.

With a three-level reduction for acceptance of responsibility, *see* PSR ¶ 24, the defendant's total offense level would be 15.

The defendant has no prior criminal convictions, and is thus in Criminal History Category I. *See* PSR ¶¶ 26-28

With a total offense level of 15, and a Criminal History Category of I, the advisory Guidelines range is 18 to 24 months of imprisonment. The defendant also faces an advisory range of one to three years of supervised release. *See* U.S.S.G. § 5D1.2(a)(2).

The defendant is also required to make mandatory restitution to the United States Department of Health and Human Services and the United States Department of Health and Human Services. The parties have agreed that the amount of restitution is $18,512.05 for HUD and $37,744 for HHS. *See* PSR ¶ 13. This restitution amount consists of the payments made by programs run by these agencies for the time periods alleged in the Indictment. *See* PSR ¶¶ 10 and 12. (For Guidelines purposes, the parties have agreed the actual amounts paid by these agencies, including time periods outside of the statute of limitations, are significantly greater.)

**B. A Sophisticated Means Enhancement is Appropriate**

U.S.S.G. § 2B1.1(10)(C) provides that a two level increase is appropriate where "the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting the sophisticated means." Application Note 9(B) explains that this provision covers "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense."

A scheme as a whole may be sophisticated where, even if each individual step is not elaborate, "all the steps were linked together . . . [to] exploit different vulnerabilities in different systems in a coordinated way." *United States v. Jackson*, 346 F.3d 22, 25 (2d Cir. 2003), vacated on other grounds, *Lauersen v. United States*, 543 U.S. 1097, 1109 (2005); *see also United States v. Jinwright*, 683 F.3d 471, 486 (4th Cir. 2012); *United States v. Halloran*, 415 F.3d 940, 945 (8th Cir. 2005); *United States v. Rettenberger*, 344 F.3d 702, 709 (7th Cir. 2003); *United States v. Wayland*, 549 F.3d 526, 529 (7th Cir. 2008) ("Even if [the defendant's] individual actions could be characterized as unsophisticated, we would follow the approach of our sister circuits and affirm [his] sentence on the ground that his overall scheme, which lasted nine years and involved a series of coordinated fraudulent transactions, was complex and sophisticated.").

In *Jackson*, the Court of Appeals rejected the argument that something more than "cleverness" is required in order to be "sophisticated," and found that "Jackson's use of hotels and courier services to take delivery of fraudulently obtained goods, his use of prepaid phone cards to prevent tracking of his activities, and his manipulations of victims' credit lines and billing addresses combine to indicate that the enhancement was merited." 346 F.3d at 25. The Court compared the facts in *Jackson* with the example, provided in the commentary, of a "telemarketing operation that locates its main office in one jurisdiction but conducts operations in another," reasoning that the commentary example "[is] not an especially elaborate scheme." *Id*.

Here, while arguably no one part of Mann's actions in adopting and maintaining a fictionalized identity may have been particularly sophisticated, the overall scheme was executed in such a way to warrant the upward adjustment. First, some 30 plus years ago, Mann obtained a fraudulent birth certificate in the name of Hailee DeSouza, taking advantage of the pre-internet days when government agencies had to rely upon paper documents as conclusive proof of identity. Mann then obtained a second fraudulent birth certificate for his infant son, creating a second fictionalized identity. What followed was then a series of frauds built on those fictionalized accounts—for example, obtaining a social security card in 1990, obtaining state driver's licenses after that, applying for HUD benefits in 2004, and then applying for Medicaid benefits in 2010.[3] Indeed, Mann's deceit was so well executed that his own adult son had no idea that he was, in fact, Jermaine Mann.

In sum, this is not, as Mann claims, "a simple false statement case." Def. Sent. Memo. at 1. Rather, the scheme involved "careful execution and coordination over an extended period of time." *Rettenberger*, 344 F.3d at 709. Mann's use of false documents and false identities over a lengthy period of time and involving multiple local, state and federal agencies are factors not present in an ordinary false statement case. *See United States v. Lewis*, 93 F.3d 1075, 1083 (2d Cir. 1996) ("Even if each step

---

[3] Mann was so committed to his false identity that he filed no fewer than four federal civil actions against his landlords, former attorney, and a state official under the name of "Hailee DeSouza." *See DeSouza v. Park West Apartments, Inc.*, 3:15cv1668(MPS); *DeSouza v. Community Builders. Inc.*, 3:17cv16(MPS); *DeSouza v. Taiman*, 3:16cv490(MPS) and *DeSouza v. Kennedy*, 3:16cv1126(MPS).

in the planned tax evasion was simple, when viewed together, the steps compromised a plan more complex than merely filling out a false tax return."). Moreover, "concealment of [one's true] identity can help make a scheme more complex and more difficult to detect, and, as such, often requires additional planning." *Id.*

### III. DISCUSSION

After the Supreme Court's holding in *United States v. Booker*, 543 U.S. 220, 243-245 (2005) rendered the Sentencing Guidelines advisory rather than mandatory, a sentencing judge is required to: "(1) calculate[] the relevant Guidelines range, including any applicable departure under the Guidelines system; (2) consider[] the Guidelines range, along with the other § 3553(a) factors; and (3) impose[] a reasonable sentence." *See United States v. Fernandez*, 443 F.3d 19, 26 (2d Cir.), cert. denied, 127 S. Ct. 192 (2006); *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005). The § 3553(a) factors include: (1) "the nature and circumstances of the offense and history and characteristics of the defendant"; (2) the need for the sentence to serve various goals of the criminal justice system, including (a) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," (b) to accomplish specific and general deterrence, (c) to protect the public from the defendant, and (d) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (3) the kinds of sentences available; (4) the sentencing range set forth in the guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need

9

to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a).

The Second Circuit reviews a sentence for reasonableness. *See Rita v. United States*, 127 S. Ct. 2456, 2459 (2007). The reasonableness standard is deferential and focuses "primarily on the sentencing court's compliance with its statutory obligation to consider the factors detailed in 18 U.S.C. § 3553(a)." *United States v. Canova*, 412 F.3d 331, 350 (2d Cir. 2005).

Here, the Government submits that a sentence of 18 to 24 months of imprisonment is the appropriate sentence based upon all of the factors currently before the Court.

First, the modest term of 18 to 24 months appropriately reflects the nature and circumstances of the offense, and the history and characteristics of the defendant. While the defendant describes his offense as a "simple false statement case, involving a modest loss[,]" Def. Sent. Memo. at 1, that statement significantly minimizes the offense. Here, the defendant maintained a fictionalized identity for more than 30 years, repeatedly represented himself under that false identity to federal agencies, and received over a hundred thousand dollars in government benefits to which he was not entitled.

And while the Government has no interest in litigating the circumstances surrounding the pending Canadian abduction charges (which it will leave to the Canadian authorities to do), the Court should not ignore the fact that, at a minimum, Mann committed the instant offense while on the run from serious charges. That is,

one cannot understand why Mann used a false identification and claimed U.S. citizenship without the benefit of knowing that Canadian law enforcement was surely looking for him.[4] In addition, the fact that Mann raised his son under an alias, as a U.S. citizen, and under the guise that Jermaine's mother was deceased is relevant to Mr. Mann's history and characteristics. *See* 18 U.S.C. § 3553(a)(1).

Moreover, a sentence of 18 to 24 months reflects the fact that the defendant's conduct was not a one-time false statement, or limited to a few events. Instead, the defendant's misrepresentation of his identity and his false claim to United States citizenship lasted decades. The defendant did not make a single, isolated mistake. Instead, he engaged in a course of action over many years. At any point during those several years, Mann could have ended his scheme, come clean, and faced reality.

Second, a significant term of imprisonment promotes respect for the law, specifically, that participation on federally-funded programs requires honest and accurate representations.

Next, a Guidelines sentence accomplishes the goal of general deterrence by sending the clear and unequivocal message that misstatements, fraud and deceit within federal programs will not be tolerated. As with any federal program, the HUD and Medicaid programs operate with limited financial resources, which funds are far

---

[4] This information also directly relates to one of Mr. Mann's false statements to the Medicaid program, as outlined in PSR ¶ 11 ("Are you fleeing from authorities?" Mann falsely responded "No.").

exceeded by the needs of low-income citizens. HUD and Medicare programs can only run operate fairly and efficiently if participants honestly comply with the law.

It is evident from the defendant's prompt acceptance of responsibility and guilty plea that he has taken responsibility for his conduct. In light of his pending removal from the United States, the defendant will be severely restricted from engaging in any type of criminal conduct here in the future.

Finally, the Government submits that the defendant's requests for a downward departure should be rejected. First, the defendant asks for credit in his criminal sentence because of the time he may serve in extradition or removal proceedings. Those consequences, however, are the defendant's own making, having been on the run from serious criminal charges that date back to 1987. Given the unique circumstances of the defendant's actions, this Court should not account for the immigration consequences that now lie ahead. Similarly, the Court should reject the defendant's offset argument that he receive some credit against the losses that he caused the United States based upon money he and his employers paid into the social security system. The defendant's actions as a whole have cost the United States a significant amount of time and resources in order to identify him, bring him to justice, and address the myriad of legal issues now facing his son. While the Government is not asking the Court to hold those costs *against* the defendant, they undercut the defendant's argument that he has financially contributed to the United States.

## IV. CONCLUSION

Thus, for the reasons set forth above, and based upon the facts currently before the Court, the Government respectfully submits that a sentence of 18 to 24 months is the appropriate sentence.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

/s/
Sarah P. Karwan
Federal Bar No. ct22911
Harold H. Chen
ASSISTANT U.S. ATTORNEYS
157 Church Street, 25th Floor
New Haven, CT  06510
Tel.: (203) 821-3700
Fax: (203) 773-5376
sarah.p.karwan@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2019, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/

SARAH P. KARWAN
ASSISTANT UNITED STATES ATTORNEY